2024 BNH 002
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 22-10203-BAH |
| | Chapter 7 |
| Wendy Edwards, | |
|       Debtor | |
| | |
| Wendy Edwards, | |
|       Plaintiff | |
| v. | Adv. No. 23-1016-BAH |
| Martin O'Malley, Commissioner of | |
| the Social Security Administration, | |
|       Defendant | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Wendy Edwards (the "Debtor") filed a complaint contending that Kilolo Kijakazi, Acting Commissioner of the Social Security Administration[1] (the "Defendant" or "SSA"), violated the discharge injunction set forth in 11 U.S.C. § 524 by reducing the Debtor's Social Security Disability Insurance ("SSDI") payments by $400.00 per month after her bankruptcy discharge issued in order to repay her pre-discharge Social Security benefit overpayment debt (Doc. No. 1) (the "Complaint"). The SSA contends that this reduction constitutes recoupment, which is not barred by the bankruptcy discharge. Accordingly, the SSA filed Defendant's Motion for

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7025, Martin O'Malley has been substituted for Kilolo Kijakazi as the defendant in this proceeding. The Court entered an order of substitution on March 6, 2024 (Doc. No. 26).

Judgment on the Pleadings (Doc. No. 9) (the "Motion") arguing that the SSA is entitled to judgment in its favor on the Complaint because recoupment is a complete defense to the Debtor's claims.  The Debtor objects to the Motion (Doc. No. 20) (the "Objection").  The Court held a hearing on the Motion on February 21, 2024, and took the matter under advisement.  The Debtor was given until February 28, 2024, to supplement the Objection, and the SSA was given until March 6, 2024, to file any response (Doc. No. 22).  The Debtor filed her supplement on February 28, 2024 (Doc. No. 23) (the "Supplement") and the SSA filed a response on March 5, 2024 (Doc. No. 25) (the "Response").  Having considered the Motion, Objection, Supplement, and Response, and the argument of counsel at the hearing, the Motion is denied for the reasons that follow.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Rule 12(c) is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b).  Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are subject to the same standard applicable to motions to dismiss.  See Portugues-Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 25 (1st Cir. 2013).  Courts should "take as true the well-pleaded facts in the plaintiff's complaint" and "draw all reasonable inferences" in favor of the nonmovant.  Martin v. Somerset County, 86 F.4th 938, 942 (1st Cir. 2023).  "In addition to the well-pleaded facts, [courts] may also consider facts

drawn from any documents that were 'fairly incorporated' in the complaint." Id. (citations omitted). Courts "may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).

**III.  UNCONTESTED FACTS**

The Debtor began collecting SSDI benefits in the 1990s, when she was in her twenties, apparently due to chronic hip problems. Since the early 1990s, she has worked periodically and has received SSDI benefits "on and off." On September 4, 2010, the SSA issued a letter to her informing her that it overpaid her $42,665.70 in benefits for the period March 2007 through June 2010 because she was not actually due them during that time.

The Debtor later applied for and was approved for benefits again. She received a notice from the SSA dated April 2, 2022, informing her that she was entitled to SSDI benefits beginning April 2022 in the amount of $1,191.00 per month. The notice further informed her that she should refund an overpayment of benefits in the amount of $41,338.70 within thirty days. The notice also indicated that the SSA would hold back her full benefit starting with the payment she would normally receive on or about June 3, 2022, if she did not refund the overpayment within thirty days. Finally, the notice informed her that the SSA would review her disability case "in 5 to 7 years."

The Debtor did not refund the overpayment of benefits within the thirty-day period outlined in the SSA notice. Instead, she filed a chapter 7 bankruptcy petition on April 29, 2022 (Bk. No. 22-10203-BAH, Doc. No. 1), where she listed on Schedule E/F an undisputed, non-contingent, liquidated debt owing to the SSA in the amount of $41,339.00 for "Social Security

Overpayment" (Bk. No. 22-10203-BAH, Doc. No. 20). On August 23, 2022, the SSA filed a complaint in her bankruptcy case seeking to except that debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) (Adv. No. 22-1023-BAH, Doc. No. 1). Ultimately, the SSA and the Debtor filed a joint stipulation of voluntary dismissal, with prejudice, on January 19, 2023 (Adv. No. 22-1023-BAH, Doc. No. 16), whereupon the SSA's complaint was dismissed.

On or about January 26, 2023, SSA's counsel informed the Debtor's counsel by email that the SSA intended to recoup $400.00 monthly from Debtor's SSDI benefits in order to repay the overpayment debt, explaining that the SSA did not consider this action a violation of the discharge injunction. On March 9, 2023, the Court issued the Debtor's discharge (Bk. No. 22-10203-BAH, Doc. No. 36). On or about April 1, 2023, the SSA began deducting $400.00 from her monthly SSDI benefit to repay the overpayment. On April 19, 2023, the Court closed the Debtor's bankruptcy case (Bk. No. 22-10203-BAH, Doc. No. 38).

On September 22, 2023, the Debtor filed a motion to reopen her bankruptcy case so that she could file an adversary proceeding against the SSA for violation of the discharge injunction (Bk. No. 22-10203-BAH, Doc. No. 40). The Court granted the motion (Bk. No. 22-10203-BAH, Doc. No. 42), and she filed the Complaint on October 27, 2023. The Debtor's prepetition and postpetition benefits were (and are) SSDI benefits.[2]

**IV. DISCUSSION**

The parties dispute whether the SSA's reduction in the Debtor's monthly SSDI benefit payments violate the discharge injunction of § 524(a)(2). Section 542(a)(2) provides that "[a]

---

[2] In her Objection, at footnote 9, the Debtor states that she has collected Social Security Insurance benefits (Title XVI) at times and SSDI benefits (Title II) at times. However, at the hearing the Debtor agreed with the SSA that the only benefits at issue in this case are SSDI benefits.

4

discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." The SSA argues that the discharge injunction only limits the SSA's ability to collect the overpayment as a personal liability of the Debtor, and therefore it is permitted to recoup the overpayment debt from the Debtor's ongoing post-discharge SSDI benefit payments without violating the discharge injunction. The Debtor contends that the SSA's reduction of the Debtor's post-discharge benefits is a setoff, and not a recoupment, and therefore the SSA's actions violate the discharge injunction. She acknowledges that the SSA's actions do not violate the discharge injunction if the reduction in benefits constitutes a recoupment. This is true because "[r]ecoupment, is, in effect, an affirmative defense to an allegation of violation of the discharge injunction." Meyer v. Kansas Dep't of Labor (In re Meyer), 521 B.R. 918, 925 (Bankr. W.D. Mo. 2014).

    A. **Setoff v. Recoupment**

The Bankruptcy Code addresses setoff in 11 U.S.C. § 553, which provides in part that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553. The Bankruptcy Code does not expressly recognize recoupment; instead, it is a common law doctrine preserved through judicial decisions. Cooper v. Social Sec. Admin. (In re Cooper), BAP No. WW023-1098-CBS, 2024 WL 166103, at *4 (B.A.P. 9th Cir. Jan. 16, 2024); In re DeLotto, BK No: 15-10648, 2015 WL 6876775, at *5 (Bankr. D.R.I. Nov. 9, 2015). "Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, there is

no claim against estate property, and recoupment is not subject to the automatic stay or the discharge injunction." Cooper, 2024 WL 166103, at *5.  Recoupment "essentially allows a creditor to recover a prepetition debt out of payments owed to the debtor post-petition." Id.

The First Circuit Court of Appeals explained in Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.), 372 F.3d 1, 3 (1st Cir. 2004), that "[t]he pertinent distinction between a setoff and a recoupment is whether the debt owed the creditor … arose out of the 'same transaction' as the debt the creditor owes the debtor."  See also Oregon v. Harmon (In re Harmon), 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Recoupment … involves a netting out of debt arising from a single transaction."); In re Lord, 284 B.R. 179, 180 (Bankr. D. Mass. 2002) ("Whether a withholding of payments constitutes setoff or recoupment depends on whether the debtor's right and obligation arise from the same transaction or from different transactions.").  As described by the First Circuit Court of Appeals in Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 398 F.3d 98, 103 (1st Cir. 2005), "[a] setoff is C's deduction from C's debt to B of an amount based on B's unrelated debt to C; a recoupment is C's deduction from C's debt based on B's debt to C arising out of the same transaction."  In other words, to determine whether a creditor's action is a recoupment or a setoff, one must determine whether reciprocal or mutual obligations of the parties arise out of the same transaction or from different transactions.

In describing the recoupment doctrine, the First Circuit has stated that recoupment constitutes an equitable exception to the Bankruptcy Code's prohibition against offsetting reciprocal debts.  Holyoke Nursing Home, 372 F.3d at 3 (citing 11 U.S.C. § 362(a)(7), which provides that a bankruptcy petition "operates as a stay of … the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against

6

the debtor"). Recoupment is based on a policy that it is inequitable for a party to enjoy the benefits of a transaction without also meeting its obligations. Id. The First Circuit concluded in Holyoke that the government's actions, in recovering Medicare overpayments to a medical-provider debtor (by reducing payments that otherwise would have been made to the debtor both before and after commencement of the debtor's chapter 11 bankruptcy case), were part of a "single, ongoing, and integrated transaction" and therefore were permissible recoupments. Id. at 5. As described by the Ninth Circuit Bankruptcy Appellate Panel, "[t]he term 'transaction' is given a liberal and flexible construction, and may comprehend a series of many occurrences, 'depending not so much upon the immediateness of their connection as upon their logical relationship.'" Cooper, 2024 WL 166103, at *5.

In Slater Health Center, 398 F.3d 98, 104 (1st Cir. 2005), the First Circuit Court of Appeals confirmed that courts should employ the "same transaction test" to determine whether a creditor's actions, in recovering an overpayment to a debtor by reducing postpetition payments due a debtor, constitute recoupment instead of a setoff. The First Circuit explained further that "[i]n at least most cases, analysis of the recoupment issue should both begin and end with the same transaction question without discussing other equitable issues." Id.[3]

### B.  Same Transaction?

The SSA argues that it is not attempting to collect the previous overpayment as a personal liability of the Debtor, but rather it is simply factoring the total amount of past SSDI overpayments into the calculation of the Debtor's present entitlement to SSDI payments, all as part of the same transaction. The Debtor argues that the SSA cannot do that without violating

---

[3] The Court notes that the Debtor has cited other circuit level decisions that apply different tests for determining whether mutual obligations should be treated as a setoff or a recoupment. See, e.g., Lee v. Schweiker (In re Lee), 739 F.2d 870 (3rd Cir. 1984). Those decisions are not binding on this Court, and the Court declines to follow them.

7

the discharge injunction as, in her view, her current right to receive SSDI payments does not arise from the same transaction from which the overpayment debt arose. The Court is thus faced with the question of whether the SSA's actions—in recovering from the Debtor the overpayment debt set forth in the SSA's September 4, 2010 notice to the Debtor by reducing her monthly SSDI benefits of $1,191.00 by $400.00, starting in April 2023—arise out of the same transaction or instead from different transactions.

The SSA argues that the Social Security Act provides a continuous relationship between the SSA and individuals who hold Social Security numbers, from the time a person receives his or her Social Security number until the person's death. See 42 U.S.C. §§ 401-434. The SSA contends that a beneficiary's monthly SSDI benefits are based on an "ongoing transaction," between the SSA and a beneficiary, which accounts for that beneficiary's lifetime of work, earnings, medical history, and previously paid benefits. The SSA explains that the Debtor's entitlement to a certain SSDI benefit is dependent upon (A) her being eligible for benefits; (B) a calculation of her "primary insurance amount," i.e., the standard benefit that an individual receives each month when there are no adjustments; and (C) a calculation of the correct monthly payment, taking into account statutorily required adjustments to the primary insurance amount. The SSA further explains that the Social Security Act requires the SSA to decrease an individual's monthly SSDI benefit to account for previously overpaid benefits. See 42 U.S.C. § 404(a)(1)(A). In the SSA's view, because the Social Security Act requires the SSA to adjust the Debtor's monthly SSDI benefit, her entitlement to ongoing SSDI benefits and her obligation to repay the SSDI overpayment arise out of the "same transaction."

The Debtor argues otherwise. She contends there is no logical relationship between the SSA's overpayment of benefits to her between 2007 and 2010, which relate to her previous

8

claims of disability, and her current entitlement to SSDI benefits, which relate to her new claim of disability filed in 2021 (for which benefits were approved in 2022). The Debtor explains that she did not have a "single" claim for disability because over the years since she first began collecting benefits in the 1990s, she was required to file a new claim and prove her eligibility each time she wanted to requalify for benefits. Accordingly, she contends that the overpayment debt and her current entitlement to SSDI are not part of one transaction.

In the Court's view, it must determine whether the SSDI statutory scheme provides for a "single, ongoing, and integrated transaction" in accordance with the Holyoke decision. The Court concludes that it does not. In Holyoke, the First Circuit Court of Appeals relied on a wholly different statutory scheme (i.e., the Medicare statute, 42 U.S.C. § 1395g) than the one presented in this case. Holyoke, 372 F.3d at 4. The Holyoke court found that the recovery of previous overpayments was a recoupment rather than a setoff because the Medicare statute, which determines the amount the government owes a provider, provides for recovery of past overpayments as part of the calculation of presently due amounts. Id. Thus, as the Holyoke court summarized the case law upon which it relied, "[t]hese courts note that section 1395g(a) does not compartmentalize [the government]'s liability for provider services into a year-to-year determination, but that it expressly defines and modifies [the government]'s liability for the provider's current cost-year services as the provider costs incurred in that year 'with necessary adjustments on account of previously made overpayments and underpayments.'" Id.

The provisions of the Social Security Act cited by the SSA, 42 U.S.C. § 404(a)(1)(A), do not, on the other hand, define the SSA's liability for SSDI benefits to include "necessary adjustments" for previous overpayments or underpayments. In fact, § 404 is not the statute that

9

defines the SSA's liability for benefits at all.[4] Rather, § 404(a)(1)(A) merely provides several alternatives by which the SSA can recover previous overpayments of benefits. One such alternative is a reduction in future benefit payments. 42 U.S.C. § 404(a)(1)(A). Another is seeking a direct refund from the beneficiary of the overpayment. Id. A third is reducing the beneficiary's tax refund by the amount of such overpayment. Id. Thus, the statutory scheme upon which the government relied in Holyoke is materially different from the statutory scheme for SSDI benefits.

While the Social Security Act may require the SSA to recover previous overpayments of benefits (as one of several alternative methods for recovering overpaid benefits), that does not compel a finding that the Debtor's overpayment debt and current benefit payments are part of the same transaction. In the Court's view, the statutory language cited by the SSA does not require the Court to find that there is "one, ongoing, integrated transaction" between the SSA and the Debtor, especially where, as here, there is a twelve-year gap in time during which the Debtor did not receive any benefits at all. The Debtor stopped receiving disability benefits in 2010 because her disability ceased. The Debtor then applied for disability benefits again in 2021 and began receiving SSDI payments in 2022. While "[t]he worker was the same, the agency was the same, [and] the law was the same," the Debtor's disability claims arose from different sets of facts: those in the 1990s and 2000s, and those in 2021 and 2022. See Malinowski v. New York State Dep't of Labor (In re Malinowski), 156 F.2d 131, 134 (2d Cir. 1998). And the SSA's overpayment claim relates to the Debtor's SSDI benefits during the period 2007 to 2010. The mere fact that "the same parties and subject matter are involved does not mean the claims arose from the same transaction." In re Abbey Fin. Corp., 193 B.R. 89, 96 (Bankr. D. Mass. 1996).

---

[4] Computation of the primary insurance amount is set forth in 42 U.S.C. § 1415.

Because the Court concludes that there is not "one, ongoing, integrated transaction" between the SSA and the Debtor, the SSA's reduction of the Debtor's monthly SSDI benefits is not a recoupment, but rather a setoff.[5]

**V. CONCLUSION**

The SSA's post-discharge actions—reducing the Debtor's post-discharge SSDI benefits by $400.00 per month in order to obtain payment on the Debtor's overpayment debt owed to the SSA—are not a permissible recoupment. Accordingly, the SSA has not established a valid defense to the Debtor's claim that the SSA has violated the discharge injunction. For that reason, the Court concludes that the SSA is not entitled to judgment in its favor on the pleadings, and the Motion must be denied. The Court will issue a separate order consistent with this opinion.

ENTERED at Concord, New Hampshire.

Date: May 7, 2024                                /s/ Bruce A. Harwood
                                                                            Bruce A. Harwood
                                                                            Chief Bankruptcy Judge

---

[5] In her papers, the Debtor argues that the Court should engage in a balancing of the equities and determine that the SSA's actions do not constitute recoupment but rather setoff. Because the Court has determined that the SSA has not satisfied the same transaction test, the Court need not address any of the Debtor's equitable considerations. The Court notes further that many of the statements by the Debtor in the Objection—e.g., that she worked while collecting benefits in order to be a productive member of society; that any failure to report such income was not done consciously or fraudulently; that she did not believe that she worked in excess of the SSA's income limits; that she is now divorced and living on her own; and that her financial situation is even more precarious now than when she filed bankruptcy in April 2022—are not set forth in the Complaint. For that additional reason, the Court is unable to consider them in the context of a motion for judgment on the pleadings.